UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| DAWN CAMPBELL, | ) | No. SA CV 07-864-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 2, 2007, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 10, 2007, and August 14, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 12, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 7, 1968. [Administrative Record ("AR") at 84, 87, 117, 579.] She has a high school education [AR at 102, 582], and has past relevant work experience as a food preparer, quark operator, and a receptionist. [AR at 97, 108-09, 593-94.]

On August 27, 2003, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been disabled since May 27, 2002, due to ovarian cancer (stage 3C), chronic abdominal pain due to adhesions from multiple abdominal surgeries, chronic pain due to fibromyalgia, incapacitating exhaustion, frequent bouts of diarrhea and constipation, sleep disorder, vertigo, frequent urination, severe leg cramping, and temporomandibular joint ("TMJ") pain. [AR at 84-86, 96, 103-104, 107-08.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 64, 66-70, 74-82.] A hearing was held on June 14, 2005, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 576-620.] A vocational expert and a medical expert also testified. [AR at 603-18.] On November 15, 2005, the ALJ determined that plaintiff was not disabled. [AR at 19-31.] Plaintiff requested review of the hearing decision. [AR at 16-17.] When the Appeals Council denied plaintiff's request for review on June 26, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 5-8.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[1] [AR at 23, 30.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: chronic abdominal pain secondary to adhesions from multiple abdominal surgeries, fibromyalgia, obesity, and depressive disorder. [AR at 24, 30.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a significant range of light work[3] with limitations as follows: "[s]he can sit for 8 hours during an 8-hour workday, and stand and/or walk 6 hours during an 8-hour workday. She must be able to change position briefly every hour. She can lift and/or carry

---

[1] The ALJ also determined that plaintiff "meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision." [AR at 23, 30.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

4

a maximum of 20 pounds occasionally and 10 pounds frequently. She is precluded from climbing ladders/scaffolds or being around unprotected heights or dangerous or fast-moving machinery. She can occasionally climb stairs, bend, balance, stoop, kneel, crouch and crawl. Due to her medications, she cannot perform work that requires hypervigilance and she should not be in charge of safety operations. She is unable to perform complex[,] detailed tasks requiring frequent changes in job tasks and routine. She should have only occasional contact with the public and should not be in a supervisory position." [AR at 27, 29-31.] At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. [AR at 29, 31.] At step five, the ALJ found, based on the vocational expert's testimony and using Medical-Vocational Rule 202.21 as a framework, that there are a significant number of jobs in the national economy that plaintiff is capable of performing. [AR at 29-31.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 30-31.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to: (1) give appropriate weight to the opinion of the treating physician; (2) find that plaintiff suffered from a mental impairment[4]; and (3) properly evaluate plaintiff's subjective symptoms and credibility. Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

---

[4] With respect to this contention, defendant argues that plaintiff has mischaracterized the ALJ's decision as the ALJ determined that plaintiff had a severe mental impairment that resulted in mild limitations. In light of the remand Order, however, the Court does not address this issue herein.

examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[5] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, (citation

---

[5] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

omitted) or (2) findings based on objective medical tests that the treating physician has not herself considered." (citation omitted)). However, even if an examining physician's opinion constitutes substantial evidence, the treating physician's opinion is still entitled to deference.[6] See id.; see also SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (emphasis in original). The opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence in the record. Id. at 830-31. "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984)).

Plaintiff argues that the ALJ failed to properly consider the treating physician's opinion. Specifically, plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for discounting the functional limitations found by plaintiff's treating physician, Dr. Cassidy Tsay. Joint Stip. at 3-5. As discussed below, the Court agrees with plaintiff.

Dr. Tsay treated plaintiff from January 2002 to May 2005. On May 25, 2005, Dr. Tsay completed a Medical Questionnaire concerning plaintiff's medical condition and resulting limitations. [AR at 466-69.] Dr. Tsay diagnosed plaintiff with chronic abdominal pain and fibromyalgia, both of which Dr. Tsay indicated lasted or could be expected to last at least twelve months. [AR at 466.] Dr. Tsay noted that plaintiff could use her hands for repetitive action, such

---

[6] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

as simple grasping, pushing and pulling of arm controls, and for fine manipulation, but only on an occasional basis. [AR at 467.] She indicated that work on a regular and continuous basis would cause plaintiff's condition to deteriorate. [AR at 468.] She found that plaintiff could sit for 4-6 hours (for 10 minutes at one time) in an eight-hour day and stand and/or walk for 1-2 hours (for 5 and 15 minutes, respectively, at one time) in an eight-hour day. [Id.] Dr. Tsay further found that during an eight-hour workday plaintiff could occasionally lift and/or carry up to 5 pounds, and could bend, squat, climb, and reach. [AR at 468.] Dr. Tsay noted that plaintiff had difficulty with her memory and concentration because of her depression, chronic pain, and medication. [AR at 469.] Dr. Tsay also noted that plaintiff's depression would affect her ability to work. [Id.] In finding that plaintiff had a moderate limitation with respect to memory or concentration, Dr. Tsay indicated that the degree of plaintiff's limitation "gets wors[e] when she is in pain." [AR at 469.] Dr. Tsay opined that plaintiff could not return to her past work as she was "not stable" and was experiencing "worsening stomach pains." [AR at 469.] Dr. Tsay concluded that plaintiff could not work "<u>consistently</u> at a sedentary job which requires that [] she be able to sit 6 hours out of 8 hours and lift 5 pounds frequently and 10 pounds occasionally." [AR at 469 (emphasis in original).]

On December 15, 2005, seven months after her completion of the Medical Questionnaire, Dr. Tsay completed a Fibromyalgia Residual Functional Capacity Questionnaire ("FRFC Questionnaire") regarding plaintiff's impairments and functional limitations. [AR at 195-98.] In the FRFC Questionnaire, Dr. Tsay indicated, among other things, that plaintiff met the American Rheumatological criteria for fibromyalgia and that her impairments lasted or could be expected to last at least twelve months. [AR at 195.] Dr. Tsay listed chronic abdominal pain secondary to adhesions, ovarian cancer and depression as plaintiff's diagnosed impairments. [Id.] In identifying plaintiff's symptoms, Dr. Tsay noted the following: multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent, severe headaches, TMJ, depression, and chronic fatigue syndrome. [AR at 195.] Dr. Tsay further noted that plaintiff's pain was precipitated by changing weather, cold, fatigue, movement/overuse, static position, and stress. [AR at 196.] Dr. Tsay opined that plaintiff's impairments were "*reasonably consistent*" with the symptoms and functional limitations described in the evaluation. [AR at 196

(emphasis in original).] Dr. Tsay indicated that plaintiff was "constantly" experiencing symptoms that were severe enough to interfere with her attention and concentration. [AR at 196.] In Dr. Tsay's opinion, plaintiff's ability to deal with work stress was markedly limited. [AR at 196.] In assessing plaintiff's functional limitations, Dr. Tsay found that plaintiff can sit and stand/walk for less than 2 hours in an eight-hour working day. [AR at 197.] Dr. Tsay indicated that plaintiff must walk every 15 minutes for a period of 5 minutes in an eight-hour working day. [Id.] Dr. Tsay also indicated that plaintiff needed "a job which permits shifting positions *at will* from sitting, standing or walking." [AR at 197 (emphasis in original).] During an eight-hour working day, Dr. Tsay noted that plaintiff would need to take frequent, unscheduled breaks and that with prolonged sitting she must elevate her legs at all times. [AR at 197-98.] Dr. Tsay found that plaintiff could occasionally lift and carry less than 10 pounds in a competitive work situation.[7] [AR at 198.] Dr. Tsay indicated that plaintiff had significant limitations in doing repetitive reaching, handling or fingering, and thus found that during an eight-hour working day on a competitive job, plaintiff could use her hands to grasp, turn and twist objects, her fingers for fine manipulation, and her arms for reaching only 10% of the time. [AR at 198.] Dr. Tsay noted that plaintiff's impairments were "likely to produce 'good days' and 'bad days.'" [AR at 198.] Dr. Tsay concluded that plaintiff is likely to be absent from work more than three times a month as a result of her impairments or treatment. [Id.]

In the decision, the ALJ discounted Dr. Tsay's assessments of plaintiff's functional limitations because (1) "[t]he limitations described [by Dr. Tsay] appear excessive, given the quite mild findings on examination and diagnostic studies, and [plaintiff's] reportedly good response to treatment, especially pain management treatment"; (2) "the limitations described are at odds with

---

[7] Although in the FRFC Questionnaire Dr. Tsay also checked boxes indicating that plaintiff can frequently lift and carry 10, 20, and 50 pounds in a competitive work situation, those markings appear to have been made in error, with "frequently" checked instead of "never." According to the FRFC Questionnaire, "[i]n an average 8 hour working day, 'occasionally' means less than 1/3 of the working day; 'frequently' means between 1/3 to 2/3 of the working day." [AR at 198.] As such, a finding that plaintiff can only occasionally lift and carry less than 10 pounds is inconsistent with a finding that plaintiff can frequently lift and carry 10, 20, or 50 pounds. Indeed, in the Medical Questionnaire, Dr. Tsay found that plaintiff could never lift and/or carry more than 5 pounds during an eight-hour workday. [AR at 468.]

9

Dr. Tsay's recommendations to [plaintiff] to exercise more and keep active"; and (3) Dr. Tsay "relied quite heavily on the subjective report of symptoms and limitations provided by [plaintiff], and seemed to uncritically accept as true most, if not all, of what [plaintiff] reported." [AR at 26.] These conclusions are not legitimate reasons to reject the treating physician's opinions.

First, the ALJ's assertion that the limitations found by Dr. Tsay "appear excessive" in light of the "quite mild findings on examination and diagnostic studies" and plaintiff's "reportedly good response to treatment," without more, is insufficient to constitute a specific and legitimate reason for rejection of Dr. Tsay's assessments. [AR at 26.] As an initial matter, the Court notes that the ALJ's assertion essentially amounts to a finding that the limitations found by Dr. Tsay are not supported by sufficient objective medical evidence or are contrary to the preponderant conclusions mandated by the objective findings. Such a conclusory assertion by the ALJ does not reach the level of specificity required in order to reject the opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct.") (footnote omitted); see also McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Furthermore, the ALJ's assertion does not accurately reflect the record as a whole. It is improper to reject a treating physician's opinion where she provided at least some objective observations and laboratory and x-ray testing in addition to subjective opinions. See Embrey, 849 F.2d at 421. Although an RFC assessment is not entitled to controlling weight when a treating physician's treatment notes are inconsistent with her RFC assessment (see Pirtle v. Astrue, 479 F.3d 931, 933 (8th Cir. 2007)), here, Dr. Tsay's treatment records are not inconsistent with her assessments in the FRFC Questionnaire and the Medical Questionnaire. For instance, in the

10

treatment records, Dr. Tsay noted plaintiff's complaints of body aches and stiffness/soreness of the hands that get worse with cold weather, stomach pain, poor sleep, and knee and shoulder aches. [AR at 227-28, 233, 235, 237, 243, 257, 273, 345.] Dr. Tsay performed multiple physical examinations of plaintiff, ordered laboratory and x-ray testing, and diagnosed plaintiff with, among other things, fibromyalgia, fatigue, depression, insomnia, and chronic abdominal pain. [Id.] Dr. Tsay's treatment records lend support to her findings in the FRFC Questionnaire that (1) changing weather, fatigue, cold, movement/overuse, static position, and stress are factors that precipitate plaintiff's pain; (2) stomach pain and severe fatigue are side effects of plaintiff's medication; and (3) plaintiff has significant limitations in doing repetitive reaching, handling or fingering. [AR at 196-98.] Further, Dr. Tsay's findings in the Medical Questionnaire that plaintiff could only occasionally use her hands for repetitive action and could not return to her past work because of worsening abdominal pain are supported by the treatment records. [AR at 467, 469.] Thus, the ALJ erred by finding that Dr. Tsay's assessments of plaintiff's functional limitations were not supported by objective clinical findings or were contrary to the preponderant conclusions mandated by the objective findings, and were inconsistent with the record as a whole.[8]

---

[8] Assuming the ALJ believed that the responses in the questionnaires completed by Dr. Tsay were inadequate, the ALJ had a duty to further develop the record in order to determine the basis of Dr. Tsay's findings. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288). In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. See Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). If evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). As a general rule, the record will be considered "inadequate" or "ambiguous" when a medical source has provided a medical opinion that is not supported by the evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citation omitted); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). Here, the record was not sufficiently developed to the extent the ALJ believed that the FRFC and Medical Questionnaires did not appear to be based on adequate medically acceptable

Additionally, the ALJ's adoption of the functional capacity assessment set forth by medical expert Dr. Sami A. Nafoosi, without a proper rejection of Dr. Tsay's findings, is insufficient.[9] Generally, more weight is given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Dr. Tsay treated plaintiff for over two years, conducted physical examinations of plaintiff, referred plaintiff for x-ray examinations and laboratory tests, and prescribed her medications. [AR at 227-28, 233, 235, 237, 243, 257, 267-71, 273-76, 283, 287, 340, 342-45, 348-54, 358, 360.] As previously noted, the treatment records from Dr. Tsay indicate that plaintiff suffered from, among other things, abdominal pain, depression, fatigue, and fibromyalgia. [See, e.g., AR at 227-28, 233, 235, 237, 243, 257, 341, 345.] See 20 C.F.R. §§ 404.1527(d)(2)(I), (ii), 416.927(d)(2)(I), (ii) (weight accorded to a treating physician's opinion dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received). Based on the length of the treatment relationship and Dr. Tsay's experience with plaintiff, Dr. Tsay had the

---

clinical and laboratory diagnostic techniques. For instance, in light of the ALJ's expressed skepticism toward the functional limitations found by Dr. Tsay in the questionnaires as being "excessive," it would have required little effort on her part to recontact Dr. Tsay to determine the basis of her assessments. The ALJ should recontact Dr. Tsay on remand in order to resolve any perceived inadequacies and fully develop the record. See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should resolve the inconsistency by recontacting the medical source).

[9] Dr. Nafoosi found that plaintiff had the following functional limitations: "she would be limited to performing jobs in which she would not have to lift more than 20 pounds on occasion, [and] 10 pounds frequently. She could sit for eight hours [during] an eight-hour day, [and] stand or walk for six hours [during] an eight-hour day provided she is allowed to change positions briefly one to three minutes each hour. She can occasionally balance, stoop, [] squat, crouch, bend, [and] crawl. She should not work where she would have to supervise others, [or] perform complex, detailed tasks that require[] frequent changes in [her] job assignment duties and routines. She could work with the public on an occasional basis. She could do jobs that are constant and repetitive." [AR at 609-10.] The ALJ "found Dr. Nafoosi's opinion to be well-reasoned and supported by substantial evidence in the record." [AR at 27.]

broadest range of knowledge regarding plaintiff's medical conditions, which is supported by the record. See Smolen, 80 F.3d at 1279; see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified . . . to form an overall conclusion as to functional capacities and limitations, as well as prescribe or approve the overall course of treatment."). Here, the ALJ did not provide legally sufficient reasons for disregarding the findings of Dr. Tsay. See Lester, 81 F.3d at 830 (the ALJ may only give less weight to a treating physician's opinion that conflicts with that of another physician if the ALJ provides sufficient specific and legitimate reasons for discounting the opinion); see also 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p. The ALJ's failure to properly discount the assessments of plaintiff's treating source undercuts her reliance on Dr. Nafoosi's opinion, and thus her determination of plaintiff's RFC.[10] See SSR 96-8p (the residual functional capacity assessment must be based on all of the relevant evidence in the case record, such as medical history, medical signs and laboratory findings, the effects of treatment, recorded observations, medical source statements, and effects of symptoms); see also 20 C.F.R. §§ 404.1545, 416.945 (the RFC assessment must be made "based on all the relevant evidence in [the] case record").

Moreover, the ALJ's reliance on plaintiff's good response to treatment, specifically pain management treatment, as a reason to discount the functional limitations found by Dr. Tsay was improper. The ALJ cannot pick and choose from the evidence in order to support her conclusions. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)); see also Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence); Gallant, 753 F.2d at 1456 (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her

---

[10] In determining plaintiff's physical residual functional capacity, the ALJ adopted Dr. Nafoosi's RFC assessment and stated, inter alia, that plaintiff could sit for 8 hours in an 8-hour workday, stand and/or walk for 6 hours in an 8-hour workday, and lift and/or carry a maximum of 20 pounds occasionally and 10 pounds frequently. [AR at 27.] Dr. Tsay's more restrictive limitations were not included by the ALJ in plaintiff's RFC assessment.

13

conclusion); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).  The fact that Dr. Tsay remarked in a treatment note that plaintiff's "pain management classes [are] helping" and that plaintiff is "doing okay" on pain management [AR at 273] does not negate Dr. Tsay's concurrent findings of abdominal pain from adhesions [id.], or her findings in other treatment notes of chronic abdominal pain secondary to adhesions, depression, anxiety, and insomnia, or her previously-noted assessments of plaintiff's limitations in the FRFC Questionnaire and the Medical Questionnaire. [AR at 227-28, 233, 235, 237.]  Read in context, it is clear that Dr. Tsay was simply noting the fact that plaintiff's pain management treatment was helping, and was in no way suggesting that plaintiff had completely recovered or that plaintiff was no longer experiencing any symptoms or limitations based on her impairments. [AR at 273.]  Furthermore, the ALJ's conclusion that plaintiff's response to pain management treatment was good ignores relevant evidence in the record that suggests that plaintiff's response to treatment was less than "good."  On December 2, 2002, Dr. Jan J. Li saw plaintiff for a pain management consultation in which she assessed plaintiff with chronic abdominal pain. [AR at 291-94.]  During the consultation, plaintiff rated her pain level as a 9 on a 10 point scale, with 10 being the worst.  On December 16, 2002, plaintiff indicated that her abdominal pain was controlled with the lidocaine patch, but again rated her pain level as a 9 out of 10. [AR at 289.]  On December 19, 2002, Dr. Lisa P. Dow performed a psychiatric evaluation of plaintiff in connection with the pain management program and diagnosed plaintiff with depression and chronic pain. [AR at 285-86.]  On January 24, 2003, plaintiff stated that her abdominal pain was "managed better" with the lidocaine patch; however, she rated her pain level as a 6 to 7 out of 10. [AR at 281.]  On March 12, 2003, plaintiff stated that the lidocaine patch helps her, "but not enough," and she rated her pain level as a 7 out of 10. [AR at 272.]  On February 17, 2005, plaintiff complained of abdominal pain and Dr. Dow again diagnosed plaintiff with chronic pain. [AR at 503-04.]  On March 17, 2005, Dr. Dow noted that plaintiff's pain level had "stayed [the] same." [AR at 501.]  On April 15, 2005, plaintiff reported that her pain had decreased over the past few weeks. [AR at 500.]  On May 3, 2005, Dr. Dow again noted that plaintiff's pain level had "stayed [the] same." [AR at 499.]  However, on June 2, 2005,

Dr. Dow noted that plaintiff's pain level had increased and plaintiff reported that she was experiencing increased abdominal pain. [AR at 496.] Thus, a review of the entire record reveals that plaintiff's response to treatment, specifically pain management treatment, fluctuated, i.e., plaintiff experienced decreased pain on some days and increased pain on other days.[11] Indeed, Dr. Tsay's finding in the FRFC Questionnaire that plaintiff's impairments are likely to produce "good days" and "bad days" [AR at 198] is consistent with the findings in the pain management treatment notes, which indicate that plaintiff's pain level fluctuates [AR at 272, 281, 285-86, 289, 291-94, 496, 499-501, 503-04], as well as plaintiff's assertions that she suffers from abdominal pain occurring on an on/off basis and that her pain fluctuates.[12] [AR at 227, 243, 267, 599-600.] Based on the totality of the information regarding plaintiff's response to pain management treatment, the ALJ's narrow focus on only plaintiff's reportedly good response to treatment as a reason to discount plaintiff's treating source is insufficient. The ALJ erred by failing to address relevant evidence in the record.

Next, the ALJ's finding that the functional limitations described by Dr. Tsay are "at odds" with her "recommendations to [plaintiff] to exercise more and keep active" does not suffice as a specific and legitimate reason for discounting Dr. Tsay's findings. Here again, the ALJ has simply isolated findings in the record in order to support her non-disability determination. See Day, 522 F.2d at 1156 (an ALJ must look at the record as a whole and not merely at the findings that support a non-disability determination). On June 12, 2003, Dr. Tsay noted that plaintiff was "trying to keep active," indicated that plaintiff was overweight, and suggested that plaintiff continue with diet and exercise. [AR at 257.] Dr. Tsay noted that plaintiff's exercise and diet were "poor" on August 6, 2003, and suggested walking and a low carbohydrate diet as part of plaintiff's treatment plan for fibromyalgia. [AR at 243.] On November 13, 2003, Dr. Tsay recommended that plaintiff

---

[11] While the ALJ in the decision cited some of the above-referenced pain management treatment notes in support of her conclusion, she failed to discuss the portions of those treatment notes, or address other relevant treatment notes, that point to a contrary conclusion.

[12] Dr. Tsay in the FRFC Questionnaire also found that plaintiff's pain varied in severity, which was consistent with Dr. Nafoosi's classification of plaintiff's pain level as moderate to severe. [AR at 612.]

1  (1) increase walking for her fibromyalgia; (2) exercise for her fatigue; and (3) start with diet and
2  exercise to facilitate weight loss. [AR at 237.] On December 15, 2003, Dr. Tsay noted that plaintiff
3  was suffering from fibromyalgia and suggested that plaintiff "keep exercis[ing]." [AR at 235.]
4  During plaintiff's visit on January 14, 2004, Dr. Tsay noted that plaintiff saw a nutritionist and was
5  getting more exercise. [AR at 233.]  Dr. Tsay diagnosed plaintiff with, among other things,
6  fibromyalgia and advised plaintiff to "add stretches [and] exercise." [Id.] On February 20, 2004,
7  Dr. Tsay noted that plaintiff's "diet/exercise [were] poor" secondary to fatigue, and made reference
8  to "diet/exercise" in assessing plaintiff with fibromyalgia. [AR at 228.] On March 31, 2004, Dr.
9  Tsay recommended that plaintiff increase "aerobic activities" as part of the treatment plan for her
10 fibromyalgia. [AR at 227.] The fact that Dr. Tsay encouraged plaintiff to increase her exercise
11 regimen and to remain active as part of the treatment plan for her fibromyalgia diagnosis and
12 weight issues does not undermine the functional limitations found by Dr. Tsay in the FRFC
13 Questionnaire and the Medical Questionnaire. Although Dr. Tsay found that plaintiff's impairments
14 resulted in certain functional limitations, Dr. Tsay did not find plaintiff incapable of all activity. [AR
15 at 195-98, 466-69.] For instance, in the Medical Questionnaire, Dr. Tsay found that plaintiff was
16 capable of walking for 1-2 hours during an eight-hour day in fifteen minute increments. [AR at
17 468.]  Further, in the FRFC Questionnaire, Dr. Tsay noted that plaintiff could: walk for one city
18 block without rest, lift and carry less than 10 pounds, and bend and twist at the waist 10% of the
19 time. [AR at 197.] That Dr. Tsay encouraged plaintiff to attempt physical activities does not make
20 the limitations found by Dr. Tsay "at odds" with her recommendations. See Fair v. Bowen, 885
21 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly
22 incapacitated to be eligible for benefits . . . .") (citations omitted); see also Reddick v. Chater, 157
23 F.3d 715, 722 (9th Cir. 1998) (". . . disability claimants should not be penalized for attempting to
24 lead normal lives in the face of their limitations."); Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th
25 /
26 /
27 /
28 /

Cir. 2001) (evidence of a plaintiff's limited ability to perform some physical activities is inadequate to support a conclusion of ability to engage in substantial gainful activity).[13]

Finally, the ALJ's finding that "Dr. Tsay relied quite heavily on the subjective report of symptoms and limitations provided by [plaintiff]" does not constitute a specific and legitimate reason for discounting Dr. Tsay's assessments regarding plaintiff's functional limitations. [AR at 26.] Dr. Tsay's reliance on plaintiff's subjective complaints hardly contradicts her findings concerning plaintiff's functional limitations, as "'[a] patient's report of complaints, or history, is an essential diagnostic tool.'" Green-Younger v. Barnhart, 335 F.3d 99, 107 (2nd Cir. 2003) (quoting Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997)); see also Brand v. Secretary of Dept. of Health, Education and Welfare, 623 F.2d 523, 526 (8th Cir. 1980) ("Any medical diagnosis must necessarily rely upon the patient's history and subjective complaints."). This is especially true where plaintiff was diagnosed with, inter alia, fibromyalgia, which is a diagnosis that "often lacks objective clinical findings." See Bragg v. Commissioner of Social Security Administration, 567 F. Supp.2d 893, 912 (N.D. Tex. June 6, 2008) (citations omitted); see also Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000). Because fibromyalgia is an illness with only subjective symptoms (see Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996)), plaintiff's subjective symptoms were particularly relevant to the medical diagnosis. See, e.g., Reddick, 157 F.3d at 726 (disagreeing with the ALJ's rejection of physician's opinion for relying on subjective complaints because chronic fatigue syndrome is primarily evaluated on the basis of plaintiff's subjective complaints). The Court notes that plaintiff's pain testimony is in fact corroborated by Dr. Nafoosi's classification of plaintiff's pain level as moderate to severe based on the pain medication that was prescribed to plaintiff. [AR at 612.] Additionally, Dr. Tsay's diagnosis of

---

[13] "[A]ctivities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." Vertigan, 260 F.3d at 1050 (emphasis in original).

fibromyalgia is confirmed by Dr. Janice C. Lysiak during a rheumatology consultation, where plaintiff was found to have "multiple tender spots in the trapezius area, scapula, intrascapular areas, [and in the] mid and lower back paraspinous muscles."[14] [AR at 246.] The diagnosis of fibromyalgia provides additional support for plaintiff's allegations of pain. See Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) ("The principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, [and] stiffness . . . ."). In any event, it is not at all clear that the functional limitations found by Dr. Tsay were based solely on plaintiff's subjective symptoms rather than Dr. Tsay's observations over the course of years of treatment. See Embrey, 849 F.2d at 422 ("The subjective judgments of treating physicians are important, and properly play a part in . . . medical evaluations."). In fact, Dr. Tsay's diagnoses of plaintiff included Dr. Tsay's observations, as well as consideration of the results of plaintiff's physical examinations and the results of laboratory and x-ray testing, in addition to plaintiff's subjective symptoms. The ALJ's decision did not give proper weight to the subjective elements of the treating source's diagnoses.

For the foregoing reasons, the ALJ erred by failing to provide sufficient specific and legitimate reasons supported by substantial evidence in the record for discounting the findings of Dr. Tsay. As such, remand is warranted.[15]

/
/
/
/
/

---

[14] Fibromyalgia is distinguished from "'other diseases of a rheumatic character' [by] multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." Rollins, 261 F.3d at 855 (quoting Sarchet, 78 F.3d at 306).

[15] As the ALJ's consideration on remand of Dr. Tsay's findings may impact on the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order.

/

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the findings of plaintiff's treating source. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: October 29, 2008

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE